IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **WILLIAM M. USCHOCK**, <br><br> Plaintiff, <br><br> v. <br><br> **UNITED STATES DEPARTMENT OF AGRICULTURE**, <br><br> Defendant. | Civil Action No. 10-950 |

CONTI, District Judge.

MEMORANDUM OPINION

This matter is before this court on the parties' cross-motions for summary judgment (ECF Nos. 19 and 23) and involves the review of a final agency determination. The applicable standard of review is set forth in the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-06. Under that standard, this court must affirm the determinations of defendant United States Department of Agriculture ("defendant" or "agency").

**1.    Background**

At the case management conference held on May 2, 2011, the court addressed the procedures for filing a summary judgment motion, which included direct reference to the relevant rules and requirements for responding to a concise statement of material fact. On May 5, 2011, the court entered a written case management order which provided, *inter alia*, that the movant for summary judgment "shall file a motion for summary judgment . . . on or before **June 7, 2011**, with the concise statement of the facts not to exceed 15 pages." (ECF No. 16 at 1.) Additionally, the order provided that the "opposing party shall file its opposition . . . on or before **July 7, 2011**, with the response concise statement of the facts not to exceed 15 pages." Id.

On May 23, 2011, plaintiff William M. Uschock ("plaintiff" or "Uschock") filed a motion for summary judgment (ECF No. 19) and a supplement, which added a "closing statement" to his motion for summary judgment. (ECF No. 22.) On June 7, 2011, defendant filed its motion for summary judgment, brief and concise statement of material facts. (ECF Nos. 23, 24 and 25.) On June 10, 2011, plaintiff filed a counter brief in response to defendant's motion for summary judgment. (ECF No. 26.) Sometime in mid-July 2011, counsel for defendant "received a phone call from Plaintiff. During the conversation, [said counsel] reiterated the fact that Plaintiff [was] required to file a responsive concise statement of material facts and encouraged him to consult Rule 56 to answer any procedural questions." (ECF No. 30 at 2.)

On August 1, 2011, defendant filed a motion to have defendant's statement of material facts deemed admitted (ECF No. 30) and a "Combined Concise Statement of Material Facts." (ECF No. 31.) In its motion, defendant argued that, because plaintiff failed to file a responsive concise statement of facts as ordered by the court, each of the factual averments in defendant's statement of material facts must be deemed admitted. On August 23, 2011, plaintiff filed a reply to defendant's "Combined Concise Statement of Material Facts." (ECF No. 32.) In his reply, plaintiff raised several challenges to the factual averments, but never cited to anything in the record to support his challenges. Under these circumstances, the court on September 19, 2011 granted defendant's motion to have its statement of material facts deemed admitted. (ECF No. 33.)

**2.     Standard of review**

Regardless of plaintiff's failure to file a concise statement of facts and the resultant consequences of deeming defendant's statement of material facts admitted for purposes of a summary judgment motion, the proper standard of review of an administrative action

> is different from the function it usually performs as a trier of fact, some of the procedures designed to prepare a case for trial do not work well when the court is reviewing agency proceedings. Specifically, a motion for summary judgment under rule 56 of the Federal Rules of Civil Procedure . . . makes no procedural sense when a district court is asked to undertake judicial review of administrative action. Such a motion is designed to isolate factual issues on which there is no genuine dispute, so that the court can determine what part of the case must be tried to the court or a jury. *Nickol v. United States*, 501 F.2d 1389, 1392 (10th Cir. 1974). Agency action, however, is reviewed, not tried. Factual issues have been presented, disputed, and resolved; and the issue is not whether the material facts are disputed, but whether the agency properly dealt with the facts. Only recently, the United States Court of Appeals for the Tenth Circuit has followed *Nickol* and cautioned, "When acting as a court of appeal, it is improper for a district court to use methods and procedures designed for trial." *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1564 (10th Cir. 1994).

Lodge Tower Condominium Ass'n v. Lodge Properties, Inc., 880 F. Supp. 1370, 1374 (D. Colo. 1995), *aff'd,* 85 F.3d 476 (10th Cir. 1996).

To the extent that an agency determination is reviewable, the applicable standard of review is set forth in the APA. The APA authorizes "the reviewing court [to] decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706. The reviewing court, however, may only set aside an agency's action, findings, and conclusions if they are found to be:

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

Id.

In Lodge Tower, the district court noted:

"The 'arbitrary or capricious' concept, needless to say, is not easy to encapsulate in a single list of rubrics because it embraces a myriad of possible faults and depends heavily on the circumstances of the case." *Puerto Rico Sun Oil Co. v. EPA,* 8 F.3d 73, 77 (1st Cir. 1993). The case law nonetheless describes the approach which a reviewing court must take. Consistent with the introductory language of section 706, the court must first look at the relevant statute to determine whether the administrative agency properly construed its authority and acted within the scope of that authority. *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 415–16, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). Next, "the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. [Citations omitted.] Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." *Id.,* 401 U.S. at 416, 91 S.Ct. at 823–24. In evaluating the agency's factual findings and inferences, the "court must find that the evidence before the agency provided a rational and ample basis for its decision." *Northwest Motorcycle Ass'n v. United States Dep't of Agric.,* 18 F.3d 1468, 1471 (9th Cir. 1994). If the agency relies on a factual finding or assumption which the court regards as clearly erroneous, application of the "arbitrary or capricious" standard requires that the court set aside the agency action only if "there is a significant chance that but for the errors the agency might have reached a different result." *Mount Evans Co. v. Madigan,* 14 F.3d 1444, 1456 (10th Cir.1994) (*quoting National Parks and Conservation Ass'n v. FAA,* 998 F.2d 1523, 1533 [10th Cir. 1993]).

Lodge Tower, 880 F. Supp. at 1376-77.[1]

The Court of Appeals for the Third Circuit explained the above standard as follows:

---

[1] See also Thomas v. U.S. E.P.A., 06-cv-115, 2007 WL 2127881 (N.D. Ia. July 23, 2007); Asante Health System v. Leavitt, 05-cv-3058, 2007 WL 1170623 (D. Or. Apr. 18, 2007); Phoenix-Griffin Group II, Ltd. v. Chao, 376 F. Supp. 2d 234, 244-45 (D. R.I. 2005).

4

> Agency action is entitled to a presumption of regularity. *The burden of proof rests with the party alleging irregularity. See Schweiker v. McClure,* 456 U.S. 188, 196, 102 S.Ct. 1665, 1670, 72 L.Ed.2d 1 (1982). This presumption does not, however, prevent a reviewing court from taking a probing, "hard look" at the agency's action. *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 415-416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971).
>
> Agency action may not be set aside on grounds that it is arbitrary and capricious if the action is rational, based on relevant factors, and within the agency's statutory authority. *Motor Veh. Mfgrs. Ass'n. v. State Farm Mut.,* 463 U.S. 29, [42-43], 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983).
>
> In considering whether agency action is rational, a reviewing court must determine whether the agency considered the relevant data and articulated an explanation establishing a "rational connection between the facts found and the choice made." *Burlington Truck Lines v. United States,* 371 U.S. 156, 168, 83 S.Ct. 239, 246, 9 L.Ed.2d 207 (1962).
>
> In considering whether agency action was based on relevant factors, the reviewing court normally must determine whether the agency relied on factors Congress intended it to consider. If the court determines that the agency relied on factors Congress did not intend for it to consider, or has failed to consider an important aspect of the problem, then the action should be set aside as arbitrary and capricious. *See Motor Vehicle Mfrs. Ass'n.,* 463 U.S. at [43-44], 103 S.Ct. at 2867.
>
> In considering whether agency action was within the scope of its statutory authority, the reviewing court first must construe the relevant statute to determine the scope of the agency's authority and discretion and then must determine whether the action in question lies within that scope. *Overton Park,* 401 U.S. at 415-16, 91 S.Ct. at 823.
>
> Finally, where, as here, judicial review includes action taken pursuant to agency regulations, validly promulgated regulations have the force of law. *Griffin v. Harris,* 571 F.2d 767, 772 (3d Cir. 1978). Moreover, the agency itself is bound by its own regulations. *U.S. v. Nixon,* 418 U.S. 683, 695-696, 94 S.Ct. 3090, 3101, 41 L.Ed.2d 1039 (1974). Failure on the part of the agency to act in compliance with its own regulations is fatal to such action. *Kelly v. Railroad Retirement Board,* 625 F.2d 486, 492 (3d Cir. 1980). Such actions are "not in accordance with law."

<u>Frisby v. U.S. Dep't. of Hous. & Urban Dev.</u>, 755 F.2d 1052, 1055-56 (3d Cir. 1985) (emphasis added).

**3.	Discussion**

This matter involves the Noninsured Crop Disaster Assistance Program ("NAP") administered under the "general supervision of the Executive Vice-President, CCC (who also serves as Administrator, Farm Service Agency [("FSA")]), and . . . carried out by State and county FSA committees." 7 C.F.R. §§ 1437.2. "NAP is designed to help reduce production risks faced by producers of commercial crops or other agricultural commodities. NAP will reduce financial losses that occur when natural disasters cause a catastrophic loss of production or where producers are prevented from planting an eligible crop." 7 C.F.R. § 1437.1 (a).

Section 1437.4 deals with "eligibility" for assistance under NAP and reads, in relevant part, as follows:

> Noninsured crop disaster assistance is available for loss of production or prevented planting of eligible commercial crops or other agricultural commodities:
>
> (1) Planted during the planting period, which means the time during which a majority of the crop is normally planted in the area, as determined by CCC, and is considered timely-planted for NAP purposes;
>
> (2) Prevented from being planted during the planting period;
>
> (3) Planted during the late planting period, which means the time after the planting period, during which certain crops, as determined by CCC, may be planted and remain eligible for reduced NAP coverage; and
>
> (4) Determined by CCC to be eligible crops:
>
> (i) For which catastrophic coverage is not available; or
>
> (ii) For specific perils not included under available catastrophic coverage.

7 C.F.R. § 1437.4(a).

The next relevant section in this matter is § 1437.9, which deals with "causes of loss" and provides as follows:

(a) To be eligible for benefits under this part, an eligible cause of loss must result in:

   (1) A loss of production greater than 50 percent of the approved yield in accordance with subpart B of this part;

   (2) Prevented planting of greater than 35 percent of the intended crop acreage according to subpart C of this part;

   (3) A value loss of greater than 50 percent of the pre-disaster value according to subpart D of this part, or

   (4) An AUD loss of greater than 50 percent of the expected AUD according to subpart E of this part.

(b) The quantity of the crop or commodity will not be reduced for any quality consideration unless a zero value is established.

(c) Eligible causes of loss include:

   (1) Damaging weather occurring before or during harvest, including but not limited to drought, hail, excessive moisture, freeze, tornado, hurricane, excessive wind, or any combination thereof;

   (2) Adverse natural occurrence before or during harvest, such as earthquake, flood, or volcanic eruption; and

   (3) A related condition, including but not limited to heat, insect infestation, or disease, which occurs as a result of an adverse natural occurrence or damaging weather occurring before or during harvest that directly causes, accelerates, or exacerbates the destruction or deterioration of an eligible crop, as determined by CCC.

(d) Due to the unique requirements, such as controlled environments, necessary for successful production of some crops and commodities; not all eligible causes of loss will apply to all crops and commodities.

(e) Ineligible causes of loss include but are not limited to:

   (1) Negligence or malfeasance of the producer;

   (2) Failure of the producer to reseed to the same crop during the same planting period in those areas and under such circumstances where it is customary;

   (3) Failure of the producer to follow good farming practices, as determined by CCC;

(4) Water contained or released by any governmental, public, or private dam or reservoir project, if an easement exists on the acreage affected for the containment or release of the water;

(5) Failure or breakdown of irrigation equipment or facilities;

(6) Except for tree crops and perennials and as provided for in § 1437.201, inadequate irrigation resources at the beginning of the crop year;

(7) A loss of inventory or yield of aquaculture (including ornamental fish), floriculture or ornamental nursery stemming from drought or any failure to provide water, soil, or growing media to such crop for any reason; or

(8) Any failure to provide a controlled environment or exercise good nursery practices when such controlled environment or practices are a condition of eligibility under this part.

7 C.F.R. § 1437.9.

The appeal procedures to challenge an agency determination are set forth in 7 C.F.R. part 11. A final determination of the agency is reviewable by any United States district court in accordance with chapter 7 of title 5 (*i.e.*, 5 U.S.C. §§ 701-06). 7 U.S.C. § 6999.

The administrative record reflects that plaintiff was notified in a letter dated October 20, 2009 by the FSA that plaintiff's

> application for payment in the Nonisured Crop Disaster Assistance Program for tomatoes and pumpkins filed on September 17, 2009 ha[s] been disapproved by the Westmoreland/Fayette County Committee. The County Committee determined that poor farming practices and not the disaster events you described caused the low yields on these two crops. Poor farming practices are not an eligible cause of loss in this program.

ECF No. 14-2 at 2.

The agency relied chiefly on one factor to disapprove plaintiff for assistance: poor farming practices, which "means the cultural practices generally used for the crop to make normal progress toward maturity and produce at least the individual unit approved yield. These practices are normally those recognized by the National Institute of Food and Agriculture as compatible with agronomic and weather conditions." 7 C.F.R. § 1437.3.

In reaching this determination, the Westmoreland/Fayette County Committee (the "County Committee") considered the circumstances listed in the October 20, 2009 letter and identified the actions taken by plaintiff which constituted examples of poor farming practices. ECF No. 14-2 at 2. Specifically, the County Committee found plaintiff's allegations that the low yields of tomatoes and pumpkins were caused by heavy downpours, cold temperatures in July 2009 and ongoing drought were unsupported by the evidence. In fact, the County Committee's review revealed that (i) the "U.S. drought monitor show[ed] no abnormally dry conditions in mid-September," (ii) "[c]limatological data for the May through September 2009 time frame show[ed] June at 0.2 degrees below normal and July at 3.2 degrees below normal," (iii) [p]ictures of another producer's [nearby] 2009 crop pumpkin field show[ed] a very good crop," and (iv) an article from the Tribune Review of October 5, 2009 "described the area's 2009 pumpkin crop as bumper." Id. The County Committee found the loss was due to: (i) planting pumpkins when the soil conditions were too wet, (ii) not replanting pumpkins after the poor stands were evident, (iii) transplanting tomatoes in mid to late June 2009 without the ability to water during transplanting or irrigate the fields, and (iv) not fertilizing according to soil test requirements. Id. The County Committee found the above omissions were evidence of poor farming practices. Id. The County Committee, therefore, concluded that the low yield was not due to climatological conditions, but to poor farming practices, which is not an eligible cause of loss under the program. Id.; see 7 C.F.R. § 1437.9(e)(3).

On October 24, 2009, plaintiff appealed the decision to the National Appeals Division ("NAD"), arguing that "a heavy downpour in June, a cold July and ongoing drought conditions caused his low yields and loss crops." (ECF No. 14-2 at 26.) A telephone hearing was held on December 2, 2009. Id.

The hearing officer considered a letter from a Penn State Professor of Vegetable Crops, who visited plaintiff's farm in August 2009. The hearing officer agreed with the FSA's determination that the professor's "one time visit to [plaintiff]'s farm does not accurately reflect [plaintiff]'s farming practices and crop conditions as compared to FSA's three visits." (ECF No. 14-2 at 31.) After both parties were given the opportunity to present their case, the hearing officer concluded that "based on the evidence, the arguments submitted by the parties, and the program regulations that apply to this situation," the agency's decision was not in error. (ECF No. 14-2 at 26.) The hearing officer noted that plaintiff had the burden of proving that the agency's decision was erroneous by a preponderance of the evidence and that plaintiff did not meet that standard because he failed to "submit[] acceptable evidence to refute FSA's position that his failure to use good farming practices and not eligible disaster events caused his low yields and loss crops." (ECF No. 14-2 at 31, citing 7 C.F.R. § 11.8(e)[2]).

The appeal determination, dated January 7, 2010, consists of a three-page detailed findings of fact section followed by two pages of discussion of the regulations applicable to the matter (7 C.F.R. part 1437) and the evidence offered by plaintiff. (ECF No. 14-2 at 26-32.) The hearing officer agreed with the FSA's determination that the low yield was caused by "poor farming practices." (ECF No. 14-2 at 26.) As a result, plaintiff was not eligible for benefits under the NAP. (Id. at 29 citing 7 C.F.R. § 1437.9(e)(3)).

The hearing officer noted that plaintiff had the burden of proving that the agency's decision was erroneous by a preponderance of the evidence and that plaintiff did not meet that standard because he failed to "submit[] acceptable evidence to refute FSA's position that his

---

[2] "The appellant has the burden of proving that the adverse decision of the agency was erroneous by a preponderance of the evidence." 7 C.F.R. § 11.8(e).

failure to use good farming practices and not eligible disaster events caused his low yields and loss crops." (ECF No. 14-2 at 31.)

On January 11, 2010, plaintiff requested a review of the appeal determination by the director of NAD. (ECF No. 14-2 at 37.) The deputy director, after articulating the issues of the case, the factual background, the proper legal standards and the legal analysis (which included a review of the evidence offered by plaintiff), concluded that plaintiff "ha[d] not proved by a preponderance of the evidence that the adverse decision is erroneous." (ECF No. 14-3 at 13.)

On April 19, 2010, plaintiff requested a reconsideration of the Director Review Determination, which was denied on April 21, 2010. (ECF No. 14-3 at 19.) The director, among other things, noted:

> [T]o the extent that your arguments present a more detailed challenge to the hearing officer determination than your request for review did, those arguments are untimely. To the extent that they repeat the arguments made in your request for review, those arguments were considered and discussed in the determination. None of the details in your request for reconsideration affects the outcome in this matter. Accordingly, I conclude that you have not demonstrated error in the result reached in the Director review determination.

Id.

On May 18, 2010, plaintiff filed another request for reconsideration of the Director Review Determination. (ECF No. 14-2 at 46.) By a letter dated June 7, 2010, NAD informed plaintiff the only recourse against the adverse decision must be sought in a United States District Court pursuant to 7 U.S.C. § 6999. (ECF No. 14-3 at 3.) On July 21, 2010, plaintiff filed a complaint in this court alleging that he was unjustly denied relief for crop loss. (ECF No. 2.)

**4.      Conclusion**

With this background and applying the above stated standard, this court is constrained to conclude that the agency determination cannot be set aside. This court's review of the various decisions made by the agency show that the agency determination is not irrational because it

11

considered the relevant data, including evidence offered by plaintiff, and articulated an explanation establishing a "'rational connection between the facts found and the choice made.'" Frisby, 755 F.2d at 1055 (quoting Burlington Truck Lines, 371 U.S. at 168). Plaintiff disagrees with the agency determination that the loss was mainly due to poor farming practices. As noted above, this factor is specifically listed in the regulations and he failed to adduce evidence of any irregularity with this determination or the review process. Plaintiff did not contend that the determination was outside the scope of the agency's authority or that it was made pursuant to invalidly promulgated regulations. Id. Similarly, plaintiff failed to articulate any other ground upon which the agency determination can be set aside. See 5 U.S.C. § 706. Accordingly, plaintiff's motion for summary judgment must be denied and defendant's motion for summary judgment must be granted based upon the record before this court. An appropriate order will be entered.

> BY THE COURT,
>
> /s/ Joy Flowers Conti
> Joy Flowers Conti
> United States District Judge